UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANITA RICHARDSON,

    Plaintiff,

v.     Case No.: 8:09-cv-1283-T-33AEP

EATON CORPORATION HEALTH AND
WELFARE ADMINISTRATIVE
COMMITTEE, as PLAN ADMINISTRATOR
of the EATON CORPORATION LONG-
TERM DISABILITY PLAN, and
SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

    Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant Eaton Corporation Health and Welfare Administrative Committee's Motion for Summary Judgment (Doc. # 28), filed April 9, 2010, and Plaintiff's Motion for Summary Judgment (Doc. # 29), also filed April 9, 2010. For the reasons that follow, Defendant's Motion is due to be granted and Plaintiff's Motion is due to be denied.

### I.   Factual Background and Procedural History

Plaintiff Anita Richardson filed a Complaint on July 9, 2009, seeking to recover Long Term Disability ("LTD") benefits under an employee welfare benefit plan (the "Plan") sponsored by Eaton Corporation and administered by Eaton Corporation Health and Welfare Administrative Committee ("Eaton

Committee"). (Doc. # 1 at ¶¶ 6,8). Sedgwick is the claims administrator of the Plan and the fiduciary charged with making initial benefit determinations. (Id. at ¶ 7). Ms. Richardson was employed by Eaton and a participant in the Plan. (Id. at ¶¶ 4-5).

Ms. Richardson's claim arises under § 1132(a)(1)(B)[1] of the Employee Retirement Income Security Act of 1974 ("ERISA"). Ms. Richardson asserts that she was and is disabled as defined by the Plan since March 28, 2006. (Id. at ¶ 9). After a 26-week elimination period, she was paid LTD benefits through June 30, 2008, when Sedgwick terminated her benefits. (Id.). Ms. Johnson pursued administrative remedies and Eaton Committee ultimately denied her appeal. (Id.).

Eaton Committee claims that Ms. Richardson is not entitled to LTD benefits under the Plan because she does not have a covered disability as defined by the Plan. (Doc. # 28 at 1). Eaton Committee argues that Ms. Richardson is covered only if illness or injury "totally and continuously prevents her from engaging in any occupation or performing any work for

---

[1] Section 1132(a)(1)(B) provides in relevant part that a claimant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

2

compensation or profit." (Id.) Eaton Committee claims that Ms. Richardson was deemed able to perform sedentary work on July 1, 2008, rendering her ineligible for continued LTD benefits. (Id.)

Ms. Richardson asserts that Eaton Committee's decision was arbitrary and capricious because it was made without a "full and fair review." (Doc. # 29 at 10). Specifically, she claims that some medical documentation was missing from the record, some medical opinions were taken out of context, her fibromyalgia was not adequately discussed, and the physicians who reviewed her record were pre-disposed against finding disability. (Id. at 10,13,17).

The parties filed cross Motions for Summary Judgment (Doc. ## 28,29) on April 9, 2010. Eaton Committee filed a Response in Opposition to Ms. Richardson's Motion on April 19, 2010. (Doc. # 30). Ms. Richardson filed a Response in Opposition to Eaton Committee's Motion on April 19, 2010. (Doc. # 31). The Motions are ripe for this Court's review.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate

specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**B.   ERISA**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court set forth the standard of review a court must apply when reviewing a denial of ERISA benefits:

5

> Consistent with established principles of trust law . . . a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Id. at 115. If the plan grants such authority, "[t]rust principles make a deferential standard of review appropriate." Id. at 111. The Supreme Court reaffirmed "Firestone deference" in Conkright v. Frommert, 130 S. Ct. 1640 (U.S. 2010), noting that it "preserves the 'careful balancing' on which ERISA is based," and promotes efficiency, predictability, and uniformity. Id. at 1649.

When an insurer both administers the plan and pays benefits, this dual role creates a conflict of interest. Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2344 (U.S. 2008). "[T]hat conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (internal quotations and citation omitted). Nonetheless, the administrator is still entitled to deferential review. Conkright, 130 S. Ct. at 1643 (citing Glenn, 128 S. Ct. at 2350).

The Eleventh Circuit has held that this deferential standard equates to an arbitrary and capricious or abuse of discretion standard. Hunt v. Hawthorne Assoc., Inc., 119 F.3d

888, 912 (11th Cir. 1997). It is triggered by express, unambiguous language conferring discretion on the administrator. Id. (citation omitted). Under this standard, the court must "determine whether there was a reasonable basis for the administrator's decision, based upon the facts as known to the administrator at the time the decision was made." Id. (quoting Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989)).

Prior to the Supreme Court's ruling in Glenn, the Eleventh Circuit established a six-step process designed to guide district courts in reviewing ERISA benefits decisions:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e. the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "de novo wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1355 (11th Cir. 2008). Glenn implicitly overruled the heightened standard of review in the sixth step by making conflict of interest merely a factor to be taken into account. Id. at 1360. Furthermore, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest."[2] Id. However, the six-step analysis remains intact except for the final step. Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195 (11th Cir. 2010)(citing White v. Coca-Cola Co., 542 F.3d 848, 854 (11th Cir. 2008).

**III. Analysis**

As an initial matter, the Court notes that both parties have stated in their Motions that there are no genuine issues of material fact in this case. Each party moves for judgment as a matter of law.

Following the Eleventh Circuit's six-step analysis in this ERISA claim, this Court must first review the evidence *de*

---

[2] The heightened arbitrary and capricious standard featured a burden-shifting requirement when an administrator had a conflict of interest. Doyle, 542 F.3d at 1356.

8

*novo* to determine whether Eaton Committee's determination that Ms. Richardson did not have a covered disability was "wrong." Doyle, 542 F.3d at 1355. The Plan defines "covered disability," in pertinent part, as follows:

> During the first 24 months of such disability, inclusive of any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company ["First Tier"]; and
>
> Following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience – at Eaton or elsewhere ["Second Tier"].

Doc. # 28 at 4). Ms. Richardson received benefits under the First Tier definition of covered disability from September 26, 2006 through March 27, 2008. (Id. at 6). She received benefits under the Second Tier definition of covered disability from March 28, 2008 through June 30, 2008. (Id.) Eaton Committee asserts that a routine investigation revealed that she was ineligible for benefits under the Second Tier definition. (Id.)

Ms. Richardson's orthopedic surgeon, Dr. Sforzo, indicated in November 2007 that Ms. Richardson could not return to her prior position but could perform light work.

9

(Doc. # 28-3 at 14). In March 2008, Dr. Sforzo submitted a report indicating that Ms. Richardson was limited in repetitive use of her upper extremities to no more than 30 minutes at a time four to six hours per day, and could not lift more than 25 pounds occasionally and no more than 15 pounds frequently. (Doc. # 28-2 at 24-25). Dr. Sforza indicated that these restrictions did not prevent her from working on a full-time or part-time basis, although he characterized the prognosis for her return to gainful employment as "poor." (Id.)

Ms. Richardson's neurosurgeon, Dr. Mayer, treated her for symptoms of fibromyalgia. (Id. at 23). In May 2007, Dr. Mayer indicated that he had released Ms. Richardson to return to work as of March 14, 2007. (Doc. # 28-3 at 9).

In June 2008, the claims administrator informed Ms. Richardson that she was no longer eligible for LTD benefits because her treating physicians indicated that she was capable of working. (Doc. # 28 at 7). In December 2008, Ms. Richardson formally appealed. (Id. at 8). As part of the appeals process, the claims administrator engaged several specialists to review Ms. Richardson's file. (Id. at 8-9). These specialists agreed that Ms. Richardson had no impairment that precluded her from performing any work. (Id.)

Based upon the foregoing evidence, the Court finds that Ms. Richardson was capable of engaging in an occupation or performing work. Thus the Court finds that Ms. Richardson was ineligible for benefits under the Plan's Second Tier definition.

Ms. Richardson argues that this documentation is incomplete, therefore she was denied the "full and fair review" that is required by law, citing <u>Yochum v. Barnett Banks, Inc.</u>, 234 F.3d 541, 546-547 (11th Cir. 2000). (Doc. # 29 at 9). However, Ms. Richardson misconstrues the meaning of the "full and fair review" requirement, which refers to the ERISA appeals process. <u>Yochum</u>, 234 F.3d at 546-547. Furthermore, the court in <u>Yochum</u> found that the administrator's reliance on false and incomplete information rendered the decision arbitrary and capricious because it violated the plain language of the plan. <u>Id.</u> The Court thus finds <u>Yochum</u> to be legally and factually inapposite to the present case.

Ms. Richardson further asserts that the specialists engaged to review her medical records were biased; she bases this assertion primarily upon the fact that the reviewers

typically have not found claimants to be disabled.[3] (Doc. # 29 at 17-21). However, Ms. Richardson offers no other evidence of the reviewers' bias.

In addition, Ms. Richardson argues that, having been an assembly line worker for more than 20 years, she is not qualified for the positions suggested by the Functional Capacity Evaluation and, in any event, cannot perform those activities on a regular, sustained basis. (Doc. #29 at 15-16). She cites <u>Helms v. Monsanto Co.</u>, 728 F.2d 1416, 1420 (11th Cir. 1984), for the proposition that "totally disabled" should not mean "utterly helpless" but rather incapable of gainful employment that provides remuneration that is "reasonably sustainable rather than a mere profit." <u>Id.</u> However, the <u>Helms</u> court sought to establish a reasonable standard in light of an arbitrator's definition of "total disability" as lacking "conscious life." <u>Id.</u> Even in that context, the court established a strict definition of total disability. <u>Id.</u> Upon due consideration, the Court finds that Ms. Richardson's

---

[3] Ms. Richardson also contends that the medical reviewers do not discuss her fibromyalgia, and cites abundant case law from other circuits in support of her assertion that failure to conduct an adequate investigation is an abuse of discretion. (Doc. # 29 at 13-14). The Court has reviewed these cases and finds them distinguishable from the instant action. Furthermore, Ms. Richardson's neurosurgeon, who was treating her for fibromyalgia, released her to return to work.

condition did not meet the definition of total disability under the Plan.

## IV. Conclusion

Reviewing the evidence *de novo*, this Court cannot categorize Eaton Committee's denial of Ms. Richardson's claim as "wrong." Ms. Richardson's treating physicians reported that she was capable of performing some work; thus, she does not have a qualifying disability under the Plan's Second Tier definition.

The Court finds that Eaton Committee's decision denying benefits under the policy was not "wrong," and thus need not reach the issue of the administrator's self-interest. The Court affirms Eaton Committee's decision.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 28) is **GRANTED**.

(2) Plaintiff's Motion for Summary Judgment (Doc. # 29) is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Defendant and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of June 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record